McKENZIE v. INDUSTRIAL COMMISSION et al.

No. 7259.   Decided May 9, 1949.   (205 P. 2d 827.)

See 71 C. J., Workmen's Compensation Acts, sec. 443; 58 Am. Jur. 716. Injury while riding in employer's conveyance, note, 145 A. L. R. 1033.

*Arthur H. Nielsen,* and *McKay, Burton, Nielsen & Richards,* all of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., *C. N. Ottosen* and *Ray, Quinney & Nebeker,* all of Salt Lake City, for defendant.

PRATT, Chief Justice.

Owen McKenzie, a former superintendent of the Whiting and Haymond Contracting Firm, had, on account of his health, taken a less important position with them. He was called a foreman by some of his associates, but a member of the firm testified he had no such powers. He was paid, as were the other employees, on an hourly basis. While riding in a Studebaker automobile owned by the contracting firm, he was critically injured and later died as the result of that automobile's collision with another at the corner of 5th East and 39th South in Salt Lake City, Utah. His

widow filed a claim for compensation with the Industrial Commission, but received an adverse ruling to the effect that his injury did not arise out of, or in the course of his employment. After her petition for rehearing was denied, she took this appeal.

The factual background of the case was this:

The contracting firm was performing certain road work about three miles from Garland, Utah. Their employees on that job lived at various places in Idaho and Utah, some 8 or 10 of them living in Springville, Utah. McKenzie was a resident of Springville. The employees used their own automobiles to go to and from work, at their own expense, or rode with their friends; or, if they learned that a firm truck or automobile was going in their direction, they were permitted to ride thereon if there was room. The firm trucks or automobiles were not used just for transportation of employees. When the employees did ride, the vehicle was making the trip for other purposes.

During the week the employees who lived some distance from the work, as did McKenzie, lived at the camp and were furnished their meals and a place to sleep, by the contracting firm—the men using their own bedding rolls. They could stay over the week end if they desired, but, if they did, they had to go the 3 miles to Garland for meals as the firm restaurant closed down. Work was closed down Saturday afternoons and until Monday morning. The employees wages were not affected by the question of whether or not they rode in the firm vehicles. J. M. Cramner was the superintendent on the job. He had assigned him to a pick-up truck to be used for firm business. The firm had offices in Salt Lake City and Springville, and the truck was frequently used to haul parts back and forth between the offices and the job. When it so operated, if any employee was making the same trip he was welcome to ride in the truck. Mr. Harold Whiting, one of the contracting partnership had a Studebaker automobile which he used to travel

about, superintending the various jobs the firm was performing.

This accident happened the afternoon of Saturday, November 29, 1947. The facts that led up to it were these: McKenzie had been in the habit of riding with Cramner in the pick-up truck between the job and Springville, if and when the truck made the trip at the time McKenzie was leaving for home. Work this afternoon was discontinued about 2:00 p. m. However, Mr. Whiting was present, and as he had to wait for the delivery of certain material at the camp, and as it was likely he might have to haul material to Springville, he requested Cramner to leave the truck for him to use. As he wanted the Studebaker car in Springville for his use at a party to be given the following Monday night, he requested Cramner to drive the Studebaker to Springville, instead of the pick-up truck. Cramner with McKenzie and three others left for Springville. In Salt Lake City, they drove to 21st South and 5th East to let one of the men out, then went South on 5th East. At 39th South there was a flash traffic light that Cramner, who was driving, thought entitled him to drive through. In doing so, he collided with another automobile, the latter hitting the Studebaker on the side where McKenzie was sitting resulting in the injury and death upon which petitioner bases her claim.

Do these facts show that McKenzie's riding in the Studebaker was merely permissive, or was it an incident of his employment? The Commission in effect, held that it was not the latter.

Recently we have had occasion to discuss this problem. *London Guarantee & Accident Company* v. *Frazee,* 112 Utah 91, 1947, 185 P. 2d 284, 288. The authorities pro and con are analyzed therein, and nothing would be accomplished to repeat that discussion here.

Applying the principles enunciated in the *Frazee* case, supra, to the present case, it seems rather obvious that the

evidence in this case will support the finding of the Industrial Commission. It seems very clear that there was no intentional regularity to conveying the employees from work to home. If the truck or automobile happened to be going on firm business in the direction the particular employee or employees desired to go, he, or they were welcome to ride. If they used their own automobiles the company did not furnish the gas. There is no evidence that the firm considered them as on duty while so riding, except of course the driver who was making the trip with the conveyance for firm purposes, rather than transporting employees. There is no evidence of the use of a firm vehicle in even one instance for merely carrying employees to or from work, for the benefit of the firm.

As stated in the *Frazee* case:

"Ordinarily, injuries received by an employee going to or from work are not received in the course of employment because the contract of employment does not usually contemplate a master-servant relationship until the employee has reached his place of work."

It might be added that if he is on his way home, he has left his place of work and is out of the employment, unless there is evidence justifying the conclusion that his contract of employment impliedly—if not expressly—includes such travel as within his employment.

Certain it is that the facts of this case beyond the requirement of substantial competent evidence, very clearly and reasonably lead to the conclusion reached by the Industrial Commission; and, for that reason, we are not justified in setting up some other conclusion as a possible solution to overrule the Commission.

The decision of the Industrial Commission is affirmed.

WOLFE, McDONOUGH, and LATIMER, JJ., concur.

WADE, Justice (concurring).
I concur.

I think from the facts there could have been a finding which would sustain a holding that the company undertook to transport decedent to and from his home, and that they can just as reasonably support a finding that such was not the arrangement. Since the commission found that such was not the arrangement, we are bound by such finding.